# Boynton *v.* The State.

*Indictment for Perjury.* ·

1. *Jurisdiction of justice of the peace, in criminal cases.*—While a justice of the peace is sitting for the trial of a case on its merits, whether civil or criminal, it may be that his court is one of limited or inferior· jurisdiction, and that nothing will be intended to be within its jurisdiction except what affirmatively appears from the papers and proceedings in the cause; but, when the justice is sitting as an examining court, on the preliminary investigation of a criminal charge, this principle does not apply, and it is not necessary that his authority to act should affirmatively appear on the face of the proceedings, in order to support their validity when collaterally assailed.

[Boynton v. The State.]

2. *Warrant of arrest, founded on coroner's inquest; justice of the peace acting as coroner.*—A warrant of arrest may be issued on the verdict of a coroner's jury (Code, § 3998), and a justice of the peace may act as coroner when that officer "is absent from the county, or unable to act" (*Ib.* § 4003); and when an inquest is held by a justice as coroner, a warrant of arrest founded on the verdict will support the jurisdiction of a committing magistrate, when collaterally assailed, no objection having been raised to the proceedings by motion to quash or otherwise, although it is not affirmatively shown that the coroner was absent, or unable to act.

3. *Admissibility of justice's proceedings as evidence.*—On a charge of perjury committed by the defendant while testifying as a witness during a preliminary investigation of a criminal charge before a justice of the peace, the original papers of the justice showing the proceedings are competent and admissible as evidence to identify them with the proceedings described in the indictment.

4. *Proceedings of justices on preliminary investigation, when acting outside of beat, or one is incompetent to sit.*—When a justice of the peace issues a warrant of arrest, returnable before himself, he may associate with him, on the trial of the preliminary investigation, "one or more magistrates of equal grade" (Code, § 4693); and it is no objection to the validity of their proceedings when thus sitting, that the associate justices are acting outside of their respective beats or precincts; nor are their proceedings void, because one of the associates was incompetent to sit.

5. *Judgment and sentence; asking defendant if he has aught to say before.*—A recital in the judgment-entry, that the defendant was asked, before judgment and sentence was pronounced on him, "if he had anything to say why the judgment of the court should not now be pronounced upon him," shows a substantial compliance with the requirements of the law.

FROM the Circuit Court of Jefferson.

Tried before the Hon. S. H. SPROTT.

The indictment in this case charged, that the defendant, Tom Boynton, "on his examination as a witness, duly sworn to testify, on the trial of Samuel R. Truss and D. H. Brown, charged with the murder of Frank Jackson, on trial for commitment before H. F. Fancher, N. J. Dison, and John Vary, who were presiding and sitting as a magistrates' court, and which court had authority to administer such oath, falsely swore that *Mr. Truss* (meaning thereby one of the defendants) *said, 'I was sure I got one of them'; and further said, 'I got the last one'; and further said, that the first one made such a dust he* (referring to said Truss) *could not see him;* the matters so sworn to be being material, and the testimony of said Tom Boynton being wilfully and corruptly false." The several points here presented for revision, with the material facts relating to them, are stated in the opinion of the court.

R. H. PEARSON, for the appellant.

T. N. McCLELLAN, Attorney-General, *contra.*

SOMERVILLE, J.—The defendant is charged with the offense of perjury, alleged to have been committed in his rendi-

[Boynton v. The State.]

tion of testimony as a witness before a justice's court on pre-
liminary investigation.

The main ground of defense urged in the cause is, that these
proceedings before the magistrate were void for want of juris-
diction.

1. It may be that, when a justice of the peace sits for the
trial of a cause on its merits, whether the proceeding be civil
or criminal, his court is one of limited or inferior jurisdiction,
and that nothing will be intended to be within his jurisdiction,
except what specially appears to be so from the papers and pro-
ceedings in the cause. But this rule has no application to pro-
ceedings before a justice when he sits as an examining court,
on mere preliminary investigation of a criminal charge. It is
true that, under the constitution and laws of this State, no war-
rant of arrest can issue for the seizure of any person, without
the oath or affirmation of some one alleging probable cause;
and without such an accusation, no preliminary proceedings for
the purpose of commitment are contemplated by the statute.
Code, 1876, §§ 4651 et seq. We have no reference, of course,
to the magestrate's power to commit for criminal acts done in
his presence. Every justice of the peace in this State is made
by law a conservator of the peace, and this function is an ancient
jurisdiction conferred by the common law upon all justices. It
always involves the power of suppressing riots and affrays, tak-
ing securities for the peace, and of apprehending and commit-
ting criminals.—1 Black. Com. 424; 1 Bish. Cr Proc. (3d Ed.),
§ 225. It is more regular, of course, and therefore advisable,
that, even in these matters, where the justice undertakes to act,
his authority should appear upon the face of the proceedings;
but it is not necessary, in order to raise a presumption of juris-
diction on collateral attack. "Justices of the peace," says Mr.
Bishop, "being the ordinary committing force of the country,
the presumption should be in favor of their jurisdiction, the
same as in favor of the superior courts doing the general judicial
business."—1 Bish. Cr. Proc. (3d Ed.), §§ 23ɔ, 228, et seq.

2. The alleged defect in the justice's proceedings is, that
the warrant of arrest was based on no sufficient accusation; the
argument being that, although the statute authorizes such a war-
rant upon the verdict of a coroner's jury of inquest, duly sworn,
and there was what purports to be such an inquisition in the
present proceedings, yet they show that the justice acted as
coroner, and he had no power to do so, under the statute, unless
the regular coroner was "absent from the county, or unable to
act," which is not shown affirmatively to have been the case.
Code, 1876, § 4003. The investigation having taken place
without objection, or without motion to quash the proceedings,
we must, on the principle above mentioned, assume that fact

existed which was necessary to sustain the jurisdiction of the magistrate's court.

3. The papers in these proceedings before the magistrate were clearly admissible in evidence, for the purpose of showing the identity of the proceedings with those described in the indictment—a fact which could be proved in no other way, under the circumstances.—*McMurry v. The State*, 6 Ala. 324.

4. The contention that the proceedings were absolutely void, because one of the three magistrates who sat upon the trial was incompetent, can not, in our judgemnt, be sustained. Two of these officers, Fancher and Dison, were unquestionably competent to sit in the cause, either one of them alone constituting a legal examining tribunal for the purpose of such a trial. It was no objection to them, that they were holding their court out of their beats or precincts, because justices of the peace, in this State, have a criminal jurisdiction in such matters co-extensive with their counties.—Code, 1876, §§ 4628, 4632, 4663. The warrant had been issued by Fancher, and made returnable before himself. The statute conferred on him the authority to "associate with himself one or more magistrates of equal grade," by whom, in connection with himself, the investigation was to be judicially conducted.—Code, 1876, § 4693. This power he had exercised by calling in Dison, and one Vary. Conceding that the latter was incompetent to sit, because he was a notary public, appointed by the Governor, and therefore empowered to exercise *ex officio* the jurisdiction of a justice only within the ward for which he had been appointed, in the city of Birmingham, we do not think this fact would vitiate the proceedings of the examining court, so as to render them void for want of jurisdiction. We need not say that this state of facts would not present an error or irregularity for which a judgment would be reversible in a proceeding from which an appeal would lie. The proceedings could be pronounced absolutely void, only on the ground that the association of an incompetent person—one not authorized to act as a justice in the particular precinct—would take away or abrogate the jurisdiction of the others, who alone, either one or both, could have lawfully sat in the cause, and administered the oath taken by the defendant. There is no presumption that the one incompetent justice dominated the judgment of the other two. His sitting must be regarded as advisory only, not detracting from the existing jurisdiction of the others; and, however vulnerable the proceeding might be on direct attack, in cases where this is allowable, it is not void when collaterally assailed, as in the present case. The law should greatly favor the validity of judicial proceedings, and sound policy is repugnant to presumptions which magnify irregularities, and necessitate the declaration of

[Tesney v. The State.]

the nullity of such proceedings, except under circumstances most clearly justifiable.

5. The judgment-entry shows with sufficient certainty that the defendant was properly interrogated before the sentence of the law was pronounced on him by the presiding judge. He was asked "if he had any thing to say why the *judgment of the court* should not now be pronounced upon him," and to this he said nothing. This was sufficient, as it was by the judgment of the court that the sentence of the law was pronounced. *Speigner's Case*, 58 Ala. 421.

We find no error in the record, and the judgment of the Circuit Court is affirmed.